## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FIRST BANK OF DELAWARE,                     :
,                                           :
                                            :
                          Plaintiff,        :
                                            :
                                            :
            v.                              :
                                            :   CIVIL ACTION NO. 11-00675 (SLR)
                                            :
LEANSPA, LLC, ;BORIS MIZHEN,                :
CHECK21.COM, LLC,  andIDO MEROS,            :
                                            :
                          Defendants        :
                                            :

**BRIEF IN SUPPORT OF PLAINTIFF AND COUNTERCLAIM DEFENDANT
FIRST BANK OF DELAWARE'S MOTION TO DISMISS COUNTS II, IV AND V OF
DEFENDANT AND COUNTERCLAIM PLAINTIFF CHECK21.COM, LLC'S
FIRST AMENDED COUNTERCLAIMS**

November 23, 2011

**STEVENS & LEE, P.C.**
Joseph H. Huston, Jr. (No. 4035)
Maria Aprile Sawczuk (No. 3320)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 425-3310; -3306
Facsimile:   (610) 371-7972; (610) 988-0838
E-mail: jhh/masa@stevenslee.com

-and-

Daniel B. Huyett
Jeffrey D. Bukowski
111 North Sixth Street
Reading, PA 19603-0679
Telephone:  (610) 478-2219; (610) 478-2215
Facsimile:   (610) 988-0801; (610) 478-0805
E-mail: dbh/ jdb@stevenslee.com

-and-

Theodore F. Monroe
**LAW OFFICES OF THEODORE F. MONROE**
801 South Figueroa Street, 12th Floor
Los Angeles, California 90017
Telephone:  (213) 233-2272
Facsimile:  (213) 622-1444
monroe@tfmlaw.com

*Attorneys for Plaintiff First Bank of Delaware*

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF PROCEEDINGS........................................................................1

II. SUMMARY OF THE ARGUMENT.....................................................................................2

III. STATEMENT OF FACTS.....................................................................................................3

IV. ARGUMENT.........................................................................................................................5

    A.  STANDARD OF REVIEW............................................................................................5

    B.  CHECK21'S FIRST AMENDED COUNTERCLAIMS ARE PROPERLY
       ANALYZED UNDER DELAWARE LAW....................................................................7

    C.  COUNT II OF CHECK21'S FIRST AMENDED COUNTERCLAIMS
       (NEGLIGENT MISREPRESENTATION) SHOULD BE DISMISSED WITH
       PREJUDICE...................................................................................................................8

    D.  COUNT IV OF CHECK21'S COUNTERCLAIMS (BREACH OF IMPLIED
       COVENANT OF GOOD FAITH AND FAIR DEALING) SHOULD BE
       DISMISSED WITH PREJUDICE..................................................................................10

    E.  COUNT V OF CHECK21'S FIRST AMENDED COUNTERCLAIMS
       (UNJUST ENRICHMENT) SHOULD BE DISMISSED WITH PREJUDICE.............15

V. CONCLUSION...................................................................................................................17

# TABLE OF AUTHORITIES

CASES

*Airborne Health, Inc. v. Squid Soap*,
  984 A.2d 126 (Del. Ch. 2009) ........................................................................................ 10-11

*American Gen. Life Ins. v. Goldstein*,
  741 F. Supp.2d 604 (D. Del. 2010) (Robinson, J.) ................................................................8

*AQSR India Private, Ltd. v. Bureau Veritas Holdings, Inc.*,
  No. 4021-VCS, 2009 WL 1707910 (Del.Ch. June 16, 2009) ................................................14

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ..........................................................................................................6

*Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters*,
  459 U.S. 519, 103 S.Ct. 897 (1983) ......................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .....................................................5, 6

*Broesler v.Wardens and Vestry of St. Barnabas Episcopal Church*,
  C.A. No. 10C–04–222 FSS, 2011 WL 2174924 (Del. Super. Ct. Feb. 28, 2011) ..................14

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat'l Ass'n*, Civil No. 10-520 (JBS/KMW), 2011 WL 864421
  (D. Del. March 9, 2011) .............................................................................................15, 16, 17

*Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing, Inc.*, No. Civ.A.
  98C-02-217WCC, 2002 WL 1335360 (Del. Super. Ct. June 13, 2002) ..................................9

*City of Pittsburgh v. West Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) ..................................................................................................6

*Custer v. Newroads, Inc.*,
  No. Civ.A. 02–1490 GMS, 2003 WL 22680918 (D. Del. Nov. 13, 2003) ..............................7

*Delaware Art Museum v. Ann Beha Architects*,
  No. 06-481 GMS. 2007 WL 2601472 (D. Del. Sept. 11, 2007) .............................................9

*Dow Chemical Canada Inc. v. HRD Corp.*,
  656 F. Supp.2d 427 (D. Del. 2009) ..................................................................................11, 14

*Dunlap v. State Farm Fire and Cas. Co.*,
  878 A.2d 434 (Del. 2005) ...............................................................................................10, 11

*Kuroda v. S.P.J.S. Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009) ...............................................................................10, 11, 15, 16

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) .............................................................................................7

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) .............................................................................................7

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) .........................................................................................11, 14

*Palma, Inc. v. Claymont Fire Co., No.*,
    No. 09L-06-121-JRS, 2009 WL 3865395, at *1 (Del. Super. Ct. Nov. 18, 2009) ...................9

*Phillips v. County. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)...........................................................................................5, 6

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997), *cert. denied*, 522 U.S. 977 (1997) ...............................................7

## STATUTES, RULES & REGULATIONS

Federal Rule of Civil Procedure 8(a)(2) .........................................................................6

Federal Rule of Civil Procedure 12(b)(6) ..................................................................2, 6, 17

## I.  NATURE AND STAGE OF PROCEEDINGS

On August 1, 2011, Plaintiff and Counterclaim Defendant First Bank of Delaware ("FBD") filed a Complaint (D.I. 1) against LeanSpa, LLC ("LeanSpa"), Boris Mizhen ("Mizhen"), Check21.com, LLC ("Check21"), and Ido Meros ("Meros").  In its Complaint, FBD asserts claims against Defendant and Counterclaim Plaintiff Check21 and Meros for breach of contract (Count IV), express contractual indemnity (Count V), and implied indemnity (Count VI) arising out of a Merchant ISO Agreement (the "ISO Agreement").  (D.I. 1, ¶¶ 63-83).  Critically, the ISO Agreement obligated Check21 to monitor LeanSpa and its activities to ensure LeanSpa and Mizhen were not engaging in fraudulent conduct or other high-risk practices.  (D.I. 1, ¶ 3).

On September 30, 2011, Check21 filed an Answer to FBD's Complaint.  (D.I. 17).  With its Answer, Check21 asserted three counterclaims against FBD:  (1) fraud in the inducement (D.I. 17, Countercl. ¶¶ 18-29); (2) breach of contract (D.I. 17, Countercl. ¶¶ 30-36); and (3) breach of implied covenant of good faith and fair dealing (D.I. 17, Countercl. ¶¶ 37-44).  On October 24, 2011, FBD filed a motion to dismiss and supporting brief moving the Court to dismiss Check21's fraud in the inducement and breach of implied covenant of good faith and fair dealing claims.  (D.I. 29, 30).

In response to FBD's motion to dismiss, on November 10, 2011, Check21 filed amended counterclaims against FBD.  (D.I. 40).  Check21's First Amended Counterclaims assert five counterclaims against FBD: (1) fraud in the inducement (D.I. 40, ¶¶ 30-45); (2) negligent misrepresentation (D.I. 40, ¶¶ 46-51); (3) breach of contract (D.I. 40, ¶¶ 52-63); and (4) breach of implied covenant of good faith and fair dealing (D.I. 40, ¶¶ 64-71); and (5) unjust enrichment (D.I. 40, ¶¶ 72-77).

SL1 1112334v2 106159.00002

Because Check21's First Amended Counterclaims are still defective, FBD has filed another motion to dismiss. For the reasons set forth below, FBD respectfully requests that Check 21's counterclaims against FBD for negligent misrepresentation (Count II), breach of implied covenant of good faith and fair dealing (Count IV), and unjust enrichment (Count V) be dismissed with prejudice.

## II.  SUMMARY OF THE ARGUMENT

Check21 asserts counterclaims against FBD for fraud in the inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count III), breach of implied covenant of good faith and fair dealing (Count IV), and unjust enrichment (Count V). Check21's negligent misrepresentation claim (Count II) should be dismissed with prejudice because the economic loss doctrine bars the claim. Check21's claim for breach of implied covenant for good faith and fair dealing (Count IV) should be dismissed with prejudice because the conduct on which Check21 bases its claim is governed by the express terms of the ISO Agreement. Check21's claim for breach of implied covenant of good faith and fair dealing is merely an attempt to recast and re-characterize its breach of contract claims and to impose on FBD contractual obligations the parties could have, but did not, include in the ISO Agreement. Finally, Check21's claim for unjust enrichment (Count V) should be dismissed with prejudice because a contract governs the relationship between parties that gives rise to the unjust enrichment claim.

SL1 1112334v2 106159.00002

### III.  STATEMENT OF FACTS[1]

Check21 is a financial transaction service provider (commonly known in the credit card processing industry as an Independent Sales Organization or "ISO").  (D.I. 40, ¶ 5).  FBD is a full-service, state-chartered bank that offers merchant banking services to qualifying businesses.  (D.I. 40, ¶ 6).

On March 2, 2010, Check21 and FBD entered into a Merchant ISO Agreement (as amended, the "ISO Agreement").  (D.I. 40, ¶ 14).  Check21 alleges that in the weeks leading up to the execution of the ISO Agreement, representatives from Check21 and FBD met to discuss the possibility of Check21's entering into a business relationship with FBD, which included a potential ISO relationship with FBD.  (D.I. 40, ¶ 7).  The FBD representatives included FBD's then-CEO Alonzo Primus ("Primus"), Ed Santosusso ("Santosusso"), a former FBD Vice-President, Sian Bastable ("Bastable"), FBD Vice-President, and Lisa Vandercook ("Vandercook"), a former FBD employee.  (D.I. 40, ¶ 7).

Check21 alleges that during a meeting on January 6, 2010, Primus, Santosusso, and Bastable represented to Check21 that FBD had the ability to handle Check21's processing without creating any disruptions or problems for Check21 and its merchants.  (D.I. 40, ¶ 9).

Check21 also alleges that during a meeting on February 18, 2010, Primus and Santosusso repeated their prior representations to Check21 that FBD had an experienced and knowledgeable staff in place that was capable of competently carrying out the credit card and check processing services that were eventually set forth in the ISO Agreement.  (D.I. 40, ¶ 10).  Primus and Santosusso allegedly also assured Check21 at the February 18 meeting that FBD was well-

---

[1]     As the instant motion to dismiss seeks dismissal of Counts II, IV and V of Check21's First Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), the "facts" as set forth in this section merely summarize the allegations in the Amended Counterclaims for purposes of FBD's motion only.  FBD does not admit any of Check21's material factual allegations.

equipped to fully comply with the established industry practices and regulations that would later be set forth in the Rules stated in the ISO Agreement.  (D.I. 40, ¶ 11).  Check21 also alleges that at the February 18 meeting, Primus and Santosusso told Check21 that FBD was experienced in the specialized area of merchant ISO relationships, in handling transactions related to the acquisition, and clearing and settling credit and debit transactions using VISA, MasterCard, Discover and other credit card and debit cards.  (D.I. 40, ¶ 12).  Check21 also alleges that at the same February 18 meeting, FBD led Check21 to believe that FBD had sufficient know-how, infrastructure and personnel to manage the relationship, and would assign competent and ethical FBD employees to administer, oversee and manage the relationship.  (D.I. 40, ¶ 13).

Once executed, each party had specific duties to perform under the ISO Agreement. Check21's duties included: (i) conducting due diligence on each potential merchant who completed a merchant agreement with FBD; (ii) monitoring the accuracy of the merchant's reserve account with FBD for adequacy and any "unusual or unacceptable trends" in the merchant's sales activity; (iii) notifying FBD of any information that reflects negatively on the merchant; and (iv) indemnifying FBD for certain losses caused by the merchant and as defined in the ISO Agreement.  (D.I. 40, ¶ 15).

Check21 alleges that FBD was to sponsor Check21 as an ISO with the Card Companies, and (i) act as a liaison between Check21 and the Card Companies, which required FBD to promptly forward to Check21 all communications that FBD received from the Card Companies that related to Check21 or any merchant that Check21 referred to FBD, and (ii) cooperate with Check21 in obtaining necessary registrations and approvals that may be required from the Card Companies from time to time.  (D.I. 40, ¶ 16).  Check21 also alleges that FBD was required to act at all times in compliance with the various rules established by the Card Companies with

4

regard to merchant processing transactions, and all other credit and debit card-related transactions (the "Rules").  (D.I. 40, ¶ 17).

Check21 alleges that on or about March 2, 2011, FBD and Check21 amended the ISO Agreement to provide for the establishment of a reserve account to offset chargebacks, fines, penalties, any minimums that were not satisfied by the settlement and/or reserve accounts established by the merchants Check21 referred to FBD.  (D.I. 40, ¶ 18).

Check21 also alleges that on February 18, 2010, FBD and Check21 entered into a Referral and Support Agreement (the "Referral Agreement").  (D.I. 40, ¶ 25).  Check21 alleges that in accordance with Section 2(b) of the Referral Agreement, Check21 deposited $500,000 into a non-interest bearing account held by FBD (the "Check21 Reserve Account") so that FBD could cover any losses not covered by customer reserve accounts.  (D.I. 40, ¶ 25).  Check21 alleges that the $500,000 it deposited into the Check21 Reserve Account was not utilized by FBD and remains intact.  (D.I. 40, ¶ 27).

Check21 claims the alleged representations by FBD employees prior to the execution of the ISO Agreement fraudulently induced Check21 to enter into the ISO Agreement.   (D.I. 40, ¶¶ 31-34).  Check21 also claims FBD negligently misrepresented its level of experience and capabilities in the credit card processing space.  (D.I. 40, ¶ 48).  Check21 alleges that, once the ISO Agreement was executed, FBD's conduct violated the express terms of the agreement and also breached the ISO Agreement's implied covenant of good faith and fair dealing.  (D.I. 40, ¶¶ 54, 66-67, 71).  Check21 also alleges FBD breached the Referral Agreement by not refunding to Check21 any of the unutilized funds in the Check21 Reserve Account.  (D.I. 40, ¶ 62).  Finally, Check21 claims FBD has been unjustly enriched by refusing to release funds Check21 maintained in a checking account with FBD.  (D.I. 40, ¶¶ 73-77).

## IV.  ARGUMENT

### A.  STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *see also Phillips v. County. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  Thus, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action.  *Phillips*, 515 F.3d at 234.  As the Supreme Court recently stressed, merely asserting "conclusory" allegations will not suffice.  *Ashcroft v. Iqbal*, __ U.S. __, __,129 S.Ct. 1937, 1950 (2009).

A plaintiff must "provide the grounds of [its] entitlement to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 & n.3, 127 S.Ct. at 1965.  The "threshold requirement" under the Federal Rules of Civil Procedure is not "notice" of mere legal theories but also of "grounds" – allegations of historical fact that, if true, would demonstrate a "plausible entitlement to relief," a "reasonably founded hope that [the] plaintiff w[ill] be able to make a case."  *Id.* at 557-562, 127 S. Ct. at 1966-69 (internal quotation marks omitted).

In its opinion in *Iqbal*, the Supreme Court stressed that the Rule 12(b)(6) standard requires "facial plausibility" which exists only if the plaintiff has pleaded sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  129 S. Ct. at 1949 (emphasis added) (*quoting Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).  Importantly, if the complaint's factual allegations only allow the Court to infer "the mere possibility of misconduct," the complaint is subject to dismissal.  *Iqbal*, 129 S. Ct. at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)).

Even before *Twombly* and *Iqbal*, courts were not required to blindly accept everything a plaintiff wrote in a complaint.  As the Third Circuit stated with respect to 12(b)(6) motions, "We do draw on the allegations of the complaint, but in a realistic, rather than slavish, manner." *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998).

Similarly, conclusions of law and unwarranted deductions of fact are not admitted for purposes of Rule 12(b)(6).  *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000).  Nor must a court accept as true unsupported conclusions, or assume that a plaintiff can prove facts that have not been alleged. *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997), *cert. denied,* 522 U.S. 977 (1997); *Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).

## B.  CHECK21'S FIRST AMENDED COUNTERCLAIMS ARE PROPERLY ANALYZED UNDER DELAWARE LAW.

Check21's claims are properly analyzed under Delaware law because the ISO Agreement contains a choice of law provision choosing  Delaware law to govern the terms of the agreementandall rights and obligations deriving from the agreement.  Specifically, paragraph 13.7 of the ISO Agreement provides, "This Agreement and all rights and obligations hereunder, including but not limited to matters of construction, validity and performance, are governed by and construed in accordance with the laws of the State of Delaware."  (D.I. 1, Ex. A, ¶ 13.7). Here, Check21 is asking the Court to read an implied contractual provision into the ISO Agreement. As this Court has previously stated, a claim for breach of implied covenant of good faith and fair dealing is contractual in nature.  *Custer v. Newroads, Inc.*, No. Civ.A. 02–1490 GMS, 2003 WL 22680918, at *5 (D. Del. Nov. 13, 2003). Therefore the agreement's choice of law provision applies.

7

Similarly, Check21's allegations in support of its negligent misrepresentation claim go directly to FBD's performance under the ISO Agreement.  Specifically, Check21 alleges that FBD failed to exercise reasonable care in communicating its experience and capabilities in the credit card processing space.  (D.I. 40, ¶ 48).  Check21 alleges that it justifiably relied on these representations and had no reason to expect that FBD would be unable to perform its obligations under the ISO Agreement.  (D.I. 40, ¶ 49).  Because Check21's contract and tort claims are intertwined and interdependent, all of these claims should be analyzed under the law of the same state.  *See American Gen. Life Ins. v. Goldstein*, 741 F. Supp.2d 604, 611 (D. Del. 2010) (Robinson, J.) ("Where contract and tort claims are intertwined and interdependent, both claims should be analyzed under the law of the same state.").  Accordingly, Delaware law applies to both Check21's contract and tort Counterclaims.

Delaware law should also apply to Check21's claim for unjust enrichment because Delaware has the most significant relationship to that claim.  Check21's claim for unjust enrichment relates to funds it allegedly maintained in a checking account with FBD.  As Check21 acknowledges in its Counterclaims, FBD is a commercial bank that is chartered under the laws of the State of Delaware and maintains an office for business in the State of Delaware.  (D.I. 40, ¶ 2).  In fact, a review of FBD's website reveals that FBD has branches only in Delaware.  Thus, Check21's unjust enrichment claim relates to funds it deposited in Delaware with a Delaware entity.  Moreover, Check21's right to the funds in the checking account, if any, is based exclusively on the contract created by the deposit of the funds into the account.  *See infra* Part IV.E.  Therefore, the place of performance of the contract at issue and the subject matter of the contract are both Delaware.

## C. COUNT II OF CHECK21'S FIRST AMENDED COUNTERCLAIMS (NEGLIGENT MISREPRESENTATION) SHOULD BE DISMISSED WITH PREJUDICE.

In Count II of its First Amended Counterclaims, Check21 asserts a claim against FBD for negligent misrepresentation.  (D.I. 40 ¶¶ 46-51).  Check21 claims it reasonably relied to its detriment on the alleged representations of FBD executives as to FBD's experience and capabilities in the credit card processing space.  (D.I. 40 ¶¶ 48-49).  Check21's negligent misrepresentation claim is barred by the economic loss doctrine.

Under Delaware law, the economic loss doctrine prevents recovery for negligent misrepresentation (and other tort claims) where, as here, only economic damages are alleged. *Palma, Inc. v. Claymont Fire Co., No. 1*, No. 09L-06-121-JRS, 2009 WL 3865395, at *1 (Del. Super. Ct. Nov. 18, 2009).  "This doctrine prevents plaintiffs from 'recovering in tort for losses suffered that are solely economic in nature.'"  *Delaware Art Museum v. Ann Beha Architects*, No. 06-481 GMS. 2007 WL 2601472, at *2 (D. Del. Sept. 11, 2007).  "Under the economic loss doctrine, a claim of negligent misrepresentation is only appropriate where the complaint alleges noneconomic losses such as personal injury or damage to property that is not the subject of the underlying claim."  *Palma*, 2009 WL 3865395, at *1.  For a plaintiff to adequately plead a negligent misrepresentation cause of action, two elements are required.  *Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing, Inc.*, No. Civ.A. 98C-02-217WCC, 2002 WL 1335360 (Del. Super. Ct. June 13, 2002).  First, the plaintiff must show that the defendant supplied the information to the plaintiff for use in business transactions with third parties.  *Id*. Second, the plaintiff must show that the defendant is in the business of supplying information. *Id*.

Here, the economic loss doctrine bars Check21's negligent misrepresentation claim because Check21 seeks recovery of purely economic damages.  In its prayers for relief, Check21

9

seeks compensatory and consequential damages, punitive damages, an award of its attorneys' fees and costs incurred in defending in the action and prosecuting its counterclaims, and an award of such other and further relief as the Court deems just and reasonable.  (D.I. 40, PageID #410).  Notably, Check21 does not allege noneconomic losses such as personal injury or damage to property.

Furthermore, Check21 has failed to allege facts satisfying either of the two required elements for a negligent misrepresentation claim.  Check21 has not alleged that FBD supplied the information about its experience and capabilities in the credit card space for Check21's use in business transactions with third parties.  Nor has Check21 alleged that FBD is in the business of supplying information.  Accordingly, Check21's claim for negligent misrepresentation should be dismissed with prejudice.

### D.  COUNT IV OF CHECK21'S FIRST AMENDED COUNTERCLAIMS (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) SHOULD BE DISMISSED WITH PREJUDICE.

In Count IV of its First Amended Counterclaims, Check21 asserts a claim against FBD for breach of the implied covenant of good faith and fair dealing in connection with the parties' ISO Agreement.  (D.I. 40, ¶¶ 64-71).  Check21 alleges that FBD "repeatedly and materially failed to act ethically, reasonably, properly and/or in good faith."  (D.I. 40, ¶ 66).

Under Delaware law, the implied covenant of good faith and fair dealing requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).  To state a claim for breach of the implied covenant, a counterclaim plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.  *Kuroda v. S.P.J.S. Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).  "General

10

allegations of bad faith conduct are not sufficient. Rather, the plaintiff must allege a specific

implied contractual obligation and allege how the violation of that obligation denied the plaintiff

the fruits of the contract." *Id.*

"The implied covenant does not apply when 'the subject at issue is expressly covered by

the contract,'" *Airborne Health, Inc. v. Squid Soap*, 984 A.2d 126, 146 (Del. Ch. 2009) (*quoting*

*Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992), *aff'd*,

609 A.2d 668 (Del. 1992)), and "the implied covenant should not be used to give plaintiffs

'contractual protections that they failed to secure for themselves at the bargaining table.'" *Dow*

*Chemical Canada Inc. v. HRD Corp.*, 656 F. Supp.2d 427, 445 (D. Del. 2009) (*quoting Aspen*

*Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004)). "Only when it

is clear from the writing that the contracting parties would have agreed to proscribe the act later

complained of had they thought to negotiate with respect to that matter may a party invoke the

covenant's protections." *Dunlap*, 878 A.2d at 442. Recently, the Delaware Supreme Court

further narrowed the circumstances in which a party may use the implied covenant of good faith

and fair dealing to imply a contractual term for which the parties did not bargain. In *Nemec v.*

*Shrader*, 991 A.2d 1120 (Del. 2010), the Delaware Supreme Court explained that the implied

covenant applies only to those situations where the parties to the contract could not have

anticipated, rather than simply failed to consider, the conduct later sought to be proscribed.

*Nemec*, 991 A.2d at 1126. Therefore, "Consistent with its narrow purpose, the implied covenant

is only rarely invoked successfully." *Kuroda*, 971 A.2d at 888.

In support of its contention that FBD repeatedly and materially failed to act ethically,

reasonably, properly and in good faith, Check21 claims FBD failed to properly supervise its

employees, allegedly resulting in "improper and unauthorized activities by certain FBD

11

employees"; provided Check21 with incorrect and misleading information; purposely and repeatedly withheld information from Check21 that it had received from third parties; provided false and misleading information to third parties concerning Check21 and/or referred merchants; and stymied attempts by Check21 and/or referred merchants to comply with the Rules of the Card Companies. (D.I. 40, ¶ 66). Check21 also alleges that FBD provided inadequate staff to service Check21's relationship and all of the Related Merchant accounts; and that FBD's inadequate infrastructure made it virtually impossible for FBD to comply with its duties and obligations under the ISO Agreement, or to properly administer and service the Referred Merchants' accounts. (D.I. 40, ¶¶ 68-69).

Check21's allegations are insufficient to state a claim for breach of implied covenant of good faith and fair dealing under Delaware law. The ISO Agreement itself expressly covers FBD's alleged breaches of the implied covenant. Thus, use of the implied covenant of good faith and fair dealing here would be inappropriate because the ISO Agreement's terms govern the conduct at issue. For example, the ISO Agreement clearly governs FBD's obligation to provide information about its processing activities and chargeback levels to Check21. Specifically, paragraph 8.1(a) of the ISO Agreement requires FBD to prepare and deliver to Check21 each month "a report that sets forth the total number of transactions processed by Merchants during the preceding calendar month, subtotaled by Merchant ('Monthly Report')." (D.I. 1, Ex. A, ¶ 8.1(a)). Similarly, paragraph 2.1 of the ISO Agreement also requires FBD to provide Check21 with BIN processing reports received from an Association that relates to Check21 or any merchant to Check21. (D.I. 1, Ex. A, ¶ 2.1).

Paragraph 2.1 also addresses FBD's obligation to act as a liaison between Check21 and each Association, including with respect to providing information to Check21 and to each

Association and in assisting Check21 to comply with the Rules.  (D.I. 1, Ex. A, ¶ 2.1).

Paragraph 2.1 of the ISO Agreement provides:

> FBD will: (i) act as a liaison between ISO and each Association, including, but not limited to, directing all communications, including but not limited to BIN processing reports, from an Association regarding ISO or any merchant to ISO (ii) cooperate with ISO in making such registrations and filings and obtaining the necessary approvals from the Associations, and (iii) keep ISO informed as to the Rules.

(D.I. 1, Ex. A, ¶ 2.1).

Paragraph 5.2(a) of the ISO Agreement also provides that during the term of the ISO Agreement FBD will "provide to [Check21] copies of relevant Rules and Rule updates or direct [Check21] to Association websites where such updates may be obtained."  (D.I. 1, Ex. A, ¶ 5.2(a)).

Therefore, whether FBD complied with its obligations to act as a liaison when it allegedly withheld information it received from the Card Companies, allegedly provided false and misleading information to the Card Companies concerning Check21 or the Referred Merchants, and "stymied" attempts by Check21 or Referred Merchants to comply with the Rules are subjects expressly covered by the terms of the ISO Agreement.  (D.I. 1, Ex. A, ¶ 2.1).  As such, the implied covenant of good faith and fair dealing does not apply here.

Check21's assertions with respect to FBD's employees and infrastructure are similarly flawed.  Check21 contends that FBD's lack of infrastructure made it "virtually impossible for FBD to comply with its duties and obligations under the ISO Agreement and to properly administer and service Referred Merchants' accounts."  (D.I. 40, ¶ 69).  Yet, this question— whether FBD complied with its duties and obligations under the ISO Agreement and properly administered and serviced the Referred Merchants' accounts—is governed by the express terms

of the ISO Agreement and there is no space in which the doctrine of implied covenant might operate.

Similarly, whether FBD's alleged failure to properly supervise its employees resulted in "improper and unauthorized activities" is necessarily dependent on whether FBD's employees in fact engaged in improper and unauthorized activities under the ISO Agreement.  This question is also obviously governed by the terms of the ISO Agreement and is therefore there can be no claim for breach of an implied covenant.  *See e.g. Broesler v. Wardens and Vestry of St. Barnabas Episcopal Church*, C.A. No. 10C–04–222 FSS, 2011 WL 2174924, at *5 (Del. Super. Ct. Feb. 28, 2011) (finding that because the express terms of the applicable contract governed, no interstitial space was left in which the doctrine of the implied covenant of good faith and fair dealing might operate.); *see also AQSR India Private, Ltd. v. Bureau Veritas Holdings, Inc.*, No. 4021-VCS, 2009 WL 1707910, at *11 (Del.Ch. June 16, 2009).

Furthermore, the staffing levels and infrastructure that FBD maintained to service Check21 and to administer the merchant accounts Check21 referred, was a requirement that Check21 could have, but did not, include in the ISO Agreement.  Check21 now asks the Court to imply a contract term and grant it protection it failed to secure for itself at the bargaining table by seeking to punish FBD for maintaining staffing levels and infrastructure at levels Check21 now alleges were insufficient.  Under Delaware law the implied covenant of good faith and fair dealing is not intended for such a purpose.  *See Dow Chemical Canada Inc. v. HRD Corp.*, 656 F. Supp.2d 427, 445 (D. Del. 2009) (the implied covenant should not be used to give plaintiffs contractual protections that they failed to secure for themselves at the bargaining table.).

Check21 also could have anticipated at the time the parties entered into the ISO Agreement that FBD's staffing levels and infrastructure could change throughout the term of the

14

Agreement.  Check21 did not, however, address this issue by the terms of the ISO Agreement.

Pursuant to *Nemec*, the Court should not permit Check21 to now use the implied covenant of

good faith and fair dealing to reform the ISO Agreement on an issue that it could have

anticipated when it entered into the Agreement, but failed to do so.

    In short, the conduct on which Check21 bases its claim for breach of implied covenant of

good faith and fair dealing is governed by the express terms of the ISO Agreement.  Check 21's

claim for breach of implied covenant of good faith and fair dealing is merely an attempt to recast

and re-characterize its breach of contract claims and impose on FBD contractual obligations the

parties could have, but did not, include in the ISO Agreement.  Accordingly, this is not one of

those rare cases in which a court applying Delaware law should impose an implied obligation on

a party.  Thus, Check21's claim for breach of implied covenant of good faith and fair dealing

should be dismissed with prejudice.

### E.  COUNT V OF CHECK21'S FIRST AMENDED COUNTERCLAIMS (UNJUST ENRICHMENT) SHOULD BE DISMISSED WITH PREJUDICE.

    In Count V of its First Amended Counterclaims, Check21 asserts a claim against FBD for

unjust enrichment.  (D.I. 40 ¶¶ 72-77).  Check21 alleges that FBD has wrongfully frozen funds

in a checking account that Check21 maintained with FBD.  (D.I. 40, ¶ 75).  However, Check21's

unjust enrichment claim is barred because a contract governs the relationship between parties

that gives rise to the unjust enrichment claim.

    Under Delaware law the elements for a cause of action for unjust enrichment are: (1) an

enrichment; (2) an impoverishment; (3) a relation between the enrichment and the

impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by

law.  *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia*

*Bank of Delaware Nat'l Ass'n*, Civil No. 10-520 (JBS/KMW), 2011 WL 864421, at *7 (D. Del.

15

March 9, 2011) (hereinafter "*Capitaliza-T*").  It is virtually hornbook law that a claim for unjust enrichment is not available, however, if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim.  *Kuroda*, 971 A.2d at 891.  "In other words, if a 'contract is the measure of [Check21's] rights, there can be no recovery under an unjust enrichment theory independent of it.'"  *Id.* (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)).

Check21 alleges FBD has been unjustly enriched by wrongfully refusing to release funds from Check21's checking account and continues to hold these funds without justification. (D.I. 40, ¶ 76).  Check21's factual allegations are insufficient to state a claim for unjust enrichment under Delaware law.  As this Court has previously stated, "The relationship between depositor and bank in this situation is governed by contract, whether implied or express." *Capitaliza-T*, 2011 WL 864421, at *7.  "Consequently, [the] refusal to return funds in an account to a depositor is 'neither a taking of possession of ... property nor an exercising of control over it, but merely a refusal to perform its promise.'"  *Id.* (*quoting Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995)).  Therefore, Check21's right to the funds allegedly in the checking account, if any, is based exclusively on the contract created by the deposit of the funds into the account.

The Court's opinion in *Capitaliza-T* demonstrates this point.  In *Capitaliza-T*, the plaintiff, a Mexican corporation, asserted a claim against a U.S. bank for unjust enrichment arising out of deposits made into the U.S. bank by a third-party corporation.  *Id.* at *1.  The plaintiff alleged that the third-party corporation had fraudulently obtained the deposited funds and argued that the U.S. Bank was obligated to return the funds from the third-party corporation's account to the plaintiff.  *Id.* at *2.

16

In *Capitaliza-T*, the Court held that plaintiff had failed to state a claim for unjust enrichment because a valid contract existed governing the bank account at issue. *Id*. at *8. The Court found that a contract was either created between the third-party corporation and the U.S. Bank for the benefit of the plaintiff, or directly between the plaintiff and the U.S. bank based on the third-party's actions as an agent for the plaintiff. *Id*. Either way, the Court found an express or implied contract existed that determined who, if anyone, was entitled to the funds in the account. *Id*. Because a valid contract governed the bank account at issue, plaintiff could not assert a claim for unjust enrichment under Delaware law. *Id*.

Here, as in *Capitaliza-T*, a valid contract exists determining who is entitled to the funds in the bank account. The contract governing Check21's right to the funds in the checking account was created by the deposit of the funds into the account. Because this contract is the full measure of Check21's rights to the deposited funds, Check21 may not also proceed with a claim for unjust enrichment. Accordingly, Check21's claim for unjust enrichment should be dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth above, Plaintiff and Counterclaim Defendant FBD respectfully requests that the Court dismiss with prejudice Counts II, IV, and V of Defendant and

Counterclaim Plaintiff Check21's First Amended Counterclaims pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

Respectfully submitted,

November 23, 2011                     STEVENS & LEE, P.C.

*/s/ Maria Aprile Sawczuk*
Joseph H. Huston, Jr. (No. 4035)
Maria Aprile Sawczuk (No. 3320)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 425-3310; -3306
Facsimile:  (610) 371-7972; (610) 988-0838
E-mail: jhh/masa@stevenslee.com

-and-

Daniel B. Huyett
Jeffrey D. Bukowski
111 North Sixth Street
Reading, PA 19603-0679
Telephone:  (610) 478-2219; (610) 478-2215
Facsimile:  (610) 988-0801; (610) 478-0805
E-mail: dbh/jdb@stevenslee.com

-and-

Theodore F. Monroe
**LAW OFFICES OF THEODORE F. MONROE**
801 South Figueroa Street, 12th Floor
Los Angeles, California  90017
Telephone:  (213) 233-2272
Facsimile:  (213) 622-1444
monroe@tfmlaw.com

*Attorneys for Plaintiff First Bank of Delaware*