IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FIRST BANK OF DELAWARE,                    :
                                           :
                    Plaintiff,             :
                                           :
          v.                               :        Civil Action No. 11-675-RGA
                                           :
LEANSPA LLC, et al.,                       :
                                           :
                    Defendants.            :

## MEMORANDUM OPINION

Joseph H. Huston, Jr., Esq., Stevens & Lee, Wilmington, Delaware, Attorney for Plaintiff

Gregory Erich Stuhlman, Esq., Greenberg Traurig, LLP, Wilmington, Delaware,
Attorney Defendants LeanSpa LLC and Boris Mizhen

David B. Anthony, Esq., Berger Harris LLC, Wilmington, Delaware,
Attorney for Defendants Check21.com LLC and Ido Meros

March 19, 2012
Wilmington, Delaware

*Ruhard G. Andrews*

ANDREWS, U.S. DISTRICT JUDGE:

This is a contract case filed by a bank against two limited liability companies and two individuals. The bank's theory against LeanSpa, LLC and Boris Mizhen is that they breached a contract relating to merchant account services. The bank's theory against Check21.com, LLC and Ido Meros is that they breached a separate contract to monitor the activities of LeanSpa and Mizhen.

Meros filed a motion to dismiss for failure to state a claim and for lack of jurisdiction over the person. (D.I. 19). Mizhen filed similar motions. (D.I. 21). The bank filed a motion to dismiss LeanSpa's counterclaims. (D.I. 31). The bank filed a motion to dismiss three counterclaims in Check21's amended answer. (D.I. 43). The United States District Court for the District of Connecticut, pursuant to litigation initiated by governmental authorities, on November 22, 2011, entered a preliminary injunction against LeanSpa, including a litigation stay. (D.I. 48, p.2). The bank and Mizhen then agreed to a stay of the litigation between them. (D.I. 48). This Court on December 19, 2011, ordered a stay of the litigation between the bank and LeanSpa. (D.I. 48). The bank promptly filed a motion requesting that the stay include Check21 and Meros. (D.I. 49). Check21 and Meros filed an Opposition in which they requested that the Meros Motion to Dismiss (D.I. 19) be decided, but in which they otherwise did not oppose the stay. (D.I. 53, pp. 6-7). The bank filed a reply, stating in essence that it might be prejudiced if the motion to dismiss was decided. (D.I. 54, pp. 4-5).

The Court is sympathetic to the arguments of both parties on whether the motion to dismiss should be decided. The Court believes it can decide the motion without harm to either party, and therefore will do so. The Court will also enter a stay of all proceedings.

The Motion to Dismiss involves the three counts alleged against Check21 and Meros,

which are for breach of contract, "express contractual indemnity," and "implied indemnity." All three counts arise out of a contract entered into on March 2, 2010, which was filed with the Complaint. (D.I. 1 & 3). The contract is a "merchant ISO agreement"[1] between the bank and "Check21.com LLC., a Florida Corporation with principal offices located at 4208 N. 31 Ave., Suite #3, Hollywood, FL 33021 ('ISO')." (D.I. 3, p.1). The main part of the agreement ends with the recital, "IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers. First Bank of Delaware By: Alonzo J. Primus, Chief Executive Officer/President Date: March 2, 2010 Check21.com LLC By: Ido Meros, SVP Date: March 2, 2010." (D.I. 3, p.22). There are various schedules attached to the agreement, including Schedule F, the "Code of Ethics for ISO Sales Representatives" "To be signed by All Principals and Sales Representatives of ISO." Meros signed this next to the preprinted "Signature of Salesperson" and included his "resident street address" (which was different than Check21's principal office location) above the identification of "Check21.com LLC" as the "Name of FBD Registered ISO."

The Complaint alleges two theories of individual liability for Meros. First, he is alleged to be a "personally responsible" as "principal and sales agent for Check21." In support of this, the bank cites the "ISO Agreement ¶ 1.7, p.22, and 'Schedule F'.)" (D.I. 1, ¶¶ 66, 70, 78). Second, the Complaint alleges that "Meros is liable to [the bank] ... as a principal and alter ego of Check21. Meros is doing business as Check21 and Check 21 is an alter ego of Meros in that there is such a unity of interest between the Check21 and Meros that they are indistinguishable from one another. Facts in support of this contention include Check21 is inadequately capitalized and staffed, does not regularly maintain corporate meetings and minutes, commingles

---

[1] ISO is short for "independent sales organization."

funds, and does not respect corporate formalities. As such. an inequitable result would occur if

Check21 and Meros are not treated as one and the same." (D.I. 1, ¶¶ 11,[2] 69, 77, 83).[3]

In its briefing, the bank argues that it has personal jurisdiction over Meros in Delaware

because of a forum selection clause. The forum selection clause (D.I. 3, ¶ 13.8) is between

Check21 and the bank. It does not give Delaware jurisdiction over a non-party to the agreement.

The fact that the agreement says (D.I. 3, ¶ 1.7) that Check21 agrees that its "employees,

independent contractors, principals and associates and any third party" will comply with the

agreement does not make Check21's employees. independent contractors, principals, associates

and third parties all parties to the agreement. The bank says. Meros signed the agreement. It

could not be any clearer, however, that he signed as an officer of Check21 and not in his

individual capacity, just as it is clear that the President of the bank also signed as a corporate

officer and not in his individual capacity.[4] Nor does the fact that Meros signed the "Code of

Ethics for Sales Representatives" – which says nothing about him consenting to suit in Delaware

– make him a party to the contract.

---

[2] Paragraph 11 of the Complaint states that in addition to being the "principal" of
Check21, he was also "owner, officer, and managing member." Paragraph 8 contains the same
additional allegations against Mizhen.

[3] The allegations against LeanSpa and Mizhen are the same. "Mizhen is liable to [the
bank] ... as a principal and alter ego of LeanSpa. Mizhen is doing business as LeanSpa and
LeanSpa is an alter ego of Mizhen in that there is such a unity of interest between the LeanSpa
and Mizhen that they are indistinguishable from one another. Facts in support of this contention
include LeanSpa is inadequately capitalized and staffed, does not regularly maintain corporate
meetings and minutes, commingles funds, and does not respect corporate formalities. As such,
an inequitable result would occur if LeanSpa and Mizhen are not treated as one and the same."
(D.I. 1, ¶¶ 52, 55, 59).

[4] It is apparent that the form of the Agreement is the bank's, as the agreement has a
"footer" describing it as the "FBD ISO Agreement Version 2.3."

The bank's second argument for personal jurisdiction over Meros is the "alter ego theory of personal jurisdiction." This argument is very closely related to the argument about whether the bank has failed to state a claim upon which relief could be granted. The bank also requests that if the Court determines that it has not established personal jurisdiction, it be permitted to conduct jurisdictional discovery. The Court is not going to address this any further at this time, since the Court's view is that the bank has not stated a claim upon which relief could be granted, and the issue of personal jurisdiction may be mooted by subsequent events, as the Court will dismiss the claims against Meros, but permit a motion to amend the complaint.

The claims against Meros that he is personally liable since he signed the contract are contrary to any reasonable interpretation of the contract supplied with the complaint. The claim that Meros and Check21 are alter egos will be dismissed, as the pleadings do not provide any factual support for this theory. The pleadings are boilerplate conclusions, as evidenced by the fact that the exact same word-for-word "facts" are alleged in relation to both corporate defendants: each is "inadequately capitalized and staffed, does not regularly maintain corporate meetings and minutes, commingles funds, and does not respect corporate formalities." The pleadings set forth to support the alter ego theory are nothing more than labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). The parties agree that the pleadings need to establish a basis to "pierce the corporate veil" under Florida law.

> It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable —to "pierce the corporate veil"—the plaintiff must prove that:
> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330. 1349 (11th Cir. 2011). The parties disagree on whether the bank has succeeded in pleading sufficient facts. Two recent decisions involving Florida corporations with similar allegations both resulted in decisions that the plaintiff had not pleaded a sufficient factual basis. *See Borchardt v. Mako Marine International, Inc.*, 2009 WL 3856678, \*6 (S.D. FL. 2009); *Traffic Jam Events. LLC v. Cortes*, 2009 WL 2175640, \*3 (M.D. FL. 2009). The Court agrees with these two cases, and will follow them.[5]

Thus, the Court will grant the Motion to Dismiss for Failure to State a Claim. (D.I. 19). The bank will be allowed to amend its complaint.

---

[5] The Defendant also argues that an "implied warranty" claim (Count 6) is not valid under Florida law. The Court does not reach that issue at this time.